UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

versus

CRIMINAL NO. 24-57-SDD-SDJ

ALBERT R. STEWART

## RULING

This matter is before the Court on the Motion to Dismiss the Indictment[1] filed by Defendant, Albert R. Stewart ("Defendant"). The United States ("the Government") filed an Opposition[2] to Defendant's motion, to which Defendant filed a Response and Supplement,[3] and the Government filed a Reply.[4] For the reasons below, Defendant's Motion will be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Defendant has been charged by Indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).[5] He has two prior convictions from 2016 in the Nineteenth Judicial District Court for the State of Louisiana (19th JDC): (1) conspiracy to commit armed robbery (January 26, 2016) resulting in a 12-year sentence, and (2) simple burglary (January 28, 2016) resulting in an eight-year sentence.[6]

Defendant filed the instant motion to dismiss the Indictment on the grounds that 18

---

[1] Rec. Doc. 18.
[2] Rec. Doc. 29.
[3] Rec. Docs. 32, 35.
[4] Rec. Doc. 38.
[5] Rec. Doc. 1.
[6] Rec. Doc. 7, p. 3.

U.S.C. §§ 922(g)(1) is unconstitutional under the Second Amendment. Defendant primarily relies upon the United States Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,[7] and *United States v. Rahimi*.[8] The Government opposes the Motion, arguing that § 922(g)(1) is constitutional facially and as applied to Defendant.

The Court can easily dispense with Defendant's facial challenge to § 922(g)(1) as it is foreclosed by the Fifth Circuit's decision in *United States v. Diaz*, wherein the court held that § 922(g)(1) was constitutional as applied to Diaz, thus finding § 922(g)(1) facially constitutional.[9] Accordingly, the Court will consider only Defendant's as-applied challenge to § 922(g)(1).

## II.   MOTION TO DISMISS

Federal Rule of Criminal Procedure 12(b)(1) provides that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."[10] Specifically, "a party may move to dismiss an indictment based on a defect in the indictment, including failure to state an offense."[11] Courts may resolve any defects before trial when the motion presents a question of law.[12] The primary question here - whether § 922(g)(1) is unconstitutional as applied to Defendant – does just that.

## III.   THE SECOND AMENDMENT

The Supreme Court first recognized an individual right under the Second

---

[7] 597 U.S. 1 (2022).
[8] 602 U.S. 680 (2024).
[9] 116 F.4th 458, 471-72 (5th Cir. 2024).
[10] Fed. R. Crim. P. (12)(b)(1).
[11] *United States v. Wilson*, No. CR 22-238, 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)) (cleaned up).
[12] *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

Amendment to keep and bear arms for self-defense in *District of Columbia v. Heller*.[13] On this ground, the High Court held unconstitutional the District of Columbia's "ban on handgun possession in the home" and "its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense."[14] However, the Court emphasized that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."[15] Accordingly, under *Heller*, these prohibitions are "presumptively lawful regulatory measures."[16]

In *Bruen*, the United States Supreme Court advanced a two-step framework for Second Amendment constitutional challenges.[17] Specifically, the Court held:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[18]

"This historical inquiry that courts must conduct will often involve reasoning by analogy ...."[19] And "whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'"[20] This involves finding "a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."[21]

---

[13] 554 U.S. 570 (2008).
[14] *Id.* at 635.
[15] *Id.* at 626.
[16] *Id.* at 627 n.26.
[17] 597 U.S. at 24
[18] *Id.* (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)).
[19] *Id.* at 28.
[20] *Id.* at 28–29 (citing C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)).
[21] *Id.* at 30.

In *United States v. Rahimi*, the Supreme Court further clarified the "historical analogue" requirement.[22] "These precedents were not meant to suggest a law trapped in amber."[23] "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition."[24] The Court found that 18 U.S.C. 922(g)(8) was constitutional on its face and as applied to *Rahimi* because the United States' "firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms."[25]

In *Diaz*, the Fifth Circuit applied this framework to § 922(g)(1).[26] The *Diaz* court considered the defendant's felon status in the second step of the *Bruen* analysis, collapsing the inquiry "into one question: whether the law is consistent with our Nation's history of firearm regulation."[27] The Fifth Circuit held that "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1) ...."[28] Accordingly, the Government bears the burden to demonstrate that the application of § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."[29]

In determining whether a historical law is relevantly similar, the Fifth Circuit instructs district courts to focus "on the why and how [and] ascertain whether the challenged regulation 'impose[s] a comparable burden on the right of armed self-defense' to that imposed by a historically recognized regulation."[30] In *Diaz*, the Fifth Circuit held that § 922(g)(1)'s justification (the "why") was "relevantly similar" to the examples of

---

[22] 602 U.S. 680, 691 (2024).
[23] *Id.*
[24] *Id.* at 692.
[25] *Id.* at 690.
[26] 116 F.4th 458.
[27] *Id.* at 467 (citing *Rahimi*, 602 U.S. at 692).
[28] *Id.*
[29] *Id.* (quoting *Bruen*, 597 U.S. at 24) (internal quotation marks omitted).
[30] *United States v. Quiroz*, 125 F.4th 713, 718 (5th Cir. 2025) (quoting *Bruen*, 597 U.S. at 29).

punishing felonies with death: "to deter violence and lawlessness."[31] The court also reasoned that the method by which § 922(g)(1) reaches this goal (the "how")—permanent disarmament—was consistent with historical methods because, if felonies were historically punished with death, "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible."[32]

Notably, the *Diaz* decision was not a blanket holding that all felonies may serve as a constitutional predicate offense to § 922(g)(1); rather, it is applicable to only those that "fit[ ] within this tradition of serious and permanent punishment[,]" such as death or permanent estate forfeiture.[33] The *Diaz* court specifically addressed a predicate conviction of theft, finding that there was a significant history and tradition of severe punishment for theft by looking to the historic laws of three states: Massachusetts, New York, and Virginia.[34] Further, the Fifth Circuit found that the historical "going armed" and forfeiture of weapons laws "punished 'those who had menaced others with firearms' ... [and] provide[d] for permanent arms forfeiture as a penalty."[35] "Imposing permanent disarmament as a punishment is also within our Nation's history and tradition."[36] The Fifth Circuit held that, "taken together, laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of § 922(g)(1) to Diaz."[37]

---

[31] *Diaz*, 116 F.4th at 469.
[32] *Id.*
[33] *Id.* at 470.
[34] *Id.* at 468.
[35] *Id.* at 470–71 (citing *Rahimi*, 602 U.S. at 697; Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 53).
[36] *Id.* at 471.
[37] *Id.*

Similarly, in *United States v. Bullock*, the Fifth Circuit rejected a § 922(g)(1) challenge by a defendant with prior convictions of aggravated assault and manslaughter.[38] "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others."[39] "The historical record demonstrates 'that legislatures have the power to prohibit dangerous people from possessing guns.'"[40] The Fifth Circuit reasoned that "[t]here can be no doubt that manslaughter and aggravated assault in this context constitute dangerous and violent crimes."[41] The court looked to the "historical tradition of severely punishing individuals convicted of homicide, a prototypical common law felony considered a 'very dangerous offense[, ]'"[42] and to the fact that the defendant's conduct was "'relevantly similar' to, and arguably more dangerous than, the 'prototypical affray [which] involved fighting in public,' the precursor to the 'going armed' laws punishable by arms forfeiture."[43]

More recently, in *Quiroz*, the Fifth Circuit addressed 18 U.S.C. § 922(n), possession of a firearm while under indictment for a felony.[44] There, the defendant was under indictment for burglary and bail jumping.[45] The Fifth Circuit analyzed the history of burglary as a capital offense, finding a tradition because seven states at the founding deemed burglary a capital offense.[46] The court also found that unanimity between the

---

[38] 123 F.4th 183, 184–85 (5th Cir. 2024).
[39] *Id.* at 185 (quoting *Rahimi*, 602 U.S. at 693).
[40] *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting)); *see also Folajtar v. Attorney Gen.*, 980 F.3d 897, 912 (3d Cir. 2020) (Bibas, J., dissenting) ("The historical touchstone is danger[.]")).
[41] *Id.* (citation omitted).
[42] *Id.* (citation omitted).
[43] *Id.* (quoting *Rahimi*, 602 U.S. at 697).
[44] 125 F.4th at 715.
[45] *Id.*
[46] *Id.* at 724.

states was not necessary to show history and tradition.[47]

At present, neither the Supreme Court nor the Fifth Circuit has set a minimum number of historic laws required to establish a history and tradition of serious and permanent punishment, and in *Diaz*, the Fifth Circuit was satisfied with a history and tradition looking at the laws of only three states.[48] In *Quiroz*, the court was satisfied with the history and tradition of seven states.[49] From these cases, the Court cannot ascertain a brightline rule for determining how many states' laws are necessary to establish a tradition, but the Court finds guidance from *Diaz* and *Quiroz*.

## IV. THE SECOND AMENDMENT AND PREDICATE OFFENSES

### A. Louisiana Simple Burglary

Defendant contends there is no historical evidence establishing that a simple burglary conviction allows for permanent disarmament.[50] Defendant argues at length that Louisiana simple burglary is not really "burglary," and the Government does not have a historical tradition of punishing burglary as a capital offense.[51] However, nearly identical arguments were presented to, and rejected by, another section of this Court in *United States v. Crocklem*.[52] After conducting the applicable analysis, the Court concluded that

> there is a history and tradition of punishing burglary with death or forfeiture of property, thus it "fits within this tradition of serious and permanent punishment.' *Diaz*, 116 F.4th at 470. The Fifth Circuit has recognized that many states at the founding punished burglary with death, which means that the lesser punishment of disarmament is consistent with this tradition. *Quiroz*, 125 F.4th at 724; *Diaz*, 116 F.4th at 469.[53]

---

[47] *Id.* at 725.
[48] 116 F.4th at 468.
[49] 125 F.4th at 724.
[50] Rec. Doc. 32, p. 7.
[51] *Id.* at pp. 7-15.
[52] No. 24-37-JWD-SDJ, 2025 WL 1261610 (M.D. La. Mar. 28, 2025).
[53] *Id.* at *7.

The Court noted that burglary is considered a dangerous felony.[54]

The Court also rejected the argument that Louisiana's simple burglary is not analogous to common law burglary, noting that "*Bruen* requires this Court to find a historical analogue to Defendant's conviction, not a historical twin."[55] The Court then looked to the "why" and "how" of the regulation and concluded that "[t]he justifications behind historically severely punishing those convicted of committing burglary and the disarmament of those convicted of simple burglary (the "why") are relevantly similar.[56] The Court also rejected the defendant's argument under the Armed Career Criminals Act ("ACCA") that "the categorical approach as defined in *Taylor* should be used to determine whether an historic law is sufficiently analogous to a modern law," noting that the defendant offered no jurisprudence to support such an argument.[57]

The Court also concluded that the "how" is relevantly similar:

> The Fifth Circuit held in *Diaz* that historical laws punishing theft with death were sufficient analogues for the "how" inquiry, because capital punishment and estate forfeiture, like § 922(g)(1) disarmament, are permanent punishments. *Diaz*, 116 F.4th at 469. Here, burglary was traditionally punished by death or estate forfeiture, a permanent punishment, *see Quiroz*, 125 F.4th at 724, and § 922(g)(1) provides for permanent disarmament. Under *Diaz*, the "how" is relevantly similar, particularly since the *Bruen* analysis requires a historical analogue, not a historical twin. *Bruen*, 597 U.S. at 30.[58]

---

[54] *Id.* at *9 (citing *United States v. Taylor*, 495 U.S. 575, 588 (1990)).
[55] *Id.* at *8 (citing *Bruen*, 597 U.S. at 30).
[56] *Id.*
[57] *Id.* The Court stated: "The categorical approach only allows a conviction to serve as an ACCA predicate 'if the statute's elements are the same as, or narrower than, those of the generic offense.' *Descamps v. United States*, 570 U.S. 254, 257 (2013). The Supreme Court in *Bruen* seemed to reject this idea, as the Second Amendment analysis requires a 'representative historical analogue, not a historical twin.' 597 U.S. at 30. Therefore, this Court will not apply the categorical approach to determine if common law burglary and simple burglary are analogous." *Id.*
[58] *Id.* at *9.

Thus, the Court denied the defendant's Motion to Dismiss the Indictment finding that, "because Louisiana's simple burglary and common law burglary carry the same risks of violence, and because the historical laws and § 922(g)(1) provide for serious and permanent punishment, common law burglary is a sufficient historical analogue to simple burglary."[59] The Court continued: "The application of § 922(g)(1) to Defendant through his simple burglary conviction fits within the history and 'tradition of serious and permanent punishment.'"[60]

The undersigned takes no issue with Judge deGravelles' extensive reasoning and analysis. Accordingly, the Court finds that, for the same reasons set forth in *Crocklem*, the Defendant's predicate felony of simple burglary supports the application of § 922(g)(1).

### B. Conspiracy to Commit Armed Robbery

Defendant also argues that his conviction of conspiracy to commit armed robbery cannot serve as a predicate offense because "[a]t the time of the founding, common law conspiracy was 'generally a *misdemeanor*.'"[61] Defendant maintains that this conviction "would not have been a felony at the time of the founding and, thus, would not have been punished 'permanently and severely' as required under *Diaz*."[62] This exact argument has likewise been rejected by another section of this Court.

In *United States v. Quinn*, this precise argument was presented to the Court.[63] The Court noted that the Fifth Circuit has not "explicitly" decided whether conspiracy to commit

---

[59] *Id.*
[60] *Id.* (citing *Diaz*, 116 F.4th at 470).
[61] Rec. Doc. 32, p. 16 (citation omitted)(emphasis in original).
[62] *Id.* (citing *Diaz*, 116 F.4th at 469).
[63] --- F.Supp.3d ---, 2025 WL 1243816 (M.D. La. 2025)(quoting *United States v. Schnur*, 132 F.4th 863, 871 (5th Cir. 2025)).

armed robbery can serve as a predicate offense for § 922(g)(1); however, "the Fifth Circuit has explicitly held that a robbery conviction, as a 'theft-related felony conviction[ ],' meant that a defendant's as-applied challenge was foreclosed by *Diaz*.[64] Further, in addressing the defendant's argument that *conspiracy* to commit armed robbery should be treated differently, the Court noted that the defendant "presented no cases—nor is the Court aware of any cases—in which any other court has treated conspiracy to commit an offense as distinguishable from the offense for the purposes of a § 922(g)(1) analysis. Indeed, the Court can find no § 922(g)(1) case in which any court has analyzed conspiracy as a misdemeanor without consideration of what, precisely, the defendant was convicted of conspiring to do.[65]

The Court acknowledged that, under Louisiana law, conspiracy to commit armed robbery "requires an act in furtherance of the armed robbery—not merely an agreement to commit the armed robbery."[66] The Court determined that "[t]he closest historical analogues to Louisiana's modern offense of conspiracy to commit armed robbery are thus not historical common law conspiracy statutes (which, again, required no more than a

---

[64] *Id.* at *7.
[65] *Id.* at *8 (citing *e.g., United States v. Rodriguez*, No. 23-2730, 2024 U.S. App. LEXIS 18166, 2024 WL 3518307 (3d Cir. July 24, 2024) (upholding a § 922(g)(1) conviction against a constitutional attack from a defendant whose only prior felony conviction was for a drug-trafficking conspiracy offense); *Bailey v. Garland*, No. 1:23-cv-422, 2024 U.S. Dist. LEXIS 146301, 2024 WL 3849444 (S.D. Ohio Aug. 15, 2024) (holding § 922(g)(1) constitutional as applied to a defendant whose only previous convictions were for conspiracy to commit wire fraud and wire fraud); *United States v. Arrington*, No. TDC-19-0532, 2024 U.S. Dist. LEXIS 179384, 2024 WL 4362160 (D. Md. Sep. 30, 2024) (holding § 922(g)(1) constitutional as applied to a defendant whose criminal record included conspiracy to commit robbery, which the court described as a violent offense); *Foster v. Garland*, No. 1:23-CV-02668-ELR, 2024 U.S. Dist. LEXIS 176402, 2024 WL 4304948 (N.D. Ga. July 30, 2024) (holding § 922(g)(1) constitutional as applied to a defendant whose only prior conviction was for conspiracy to commit securities, mail, wire, and bank fraud); *United States v. Dollison*, No. 3:180cr-00066-SLG, 2024 U.S. Dist. LEXIS 163912, 2024 WL 4145617 (D. Alaska Sep. 11, 2024) (holding, in a post-conviction collateral attack, that § 922(g)(1) was constitutional as applied to a defendant who had been previously convicted of a drug conspiracy charge)).
[66] *Id.* at *9 (citing e.g., *State v. Broussard*, 49,240 (La. App. 2 Cir. 10/1/14), 149 So. 3d 446; *State v. Davis*, 12-512 (La. App. 5 Cir. 4/24/13), 115 So. 3d 68.).

mere agreement) but historical robbery, accessory to robbery, and aiding and abetting robbery statutes."[67] The Court stated that "[r]obbery was, without any doubt, a felony at common law and at the time of the founding[,]"and then proceeded to discuss the various methods of punishment for robbery in several states.[68] From this analysis, the Court concluded that there is "a clear historical tradition of punishing not only armed robbery but also aiding, abetting, or accessory to robbery with capital punishment."[69] The Court further found that § 922(g)(1) "comports with both the 'why' and 'how' of these historical analogues."[70] On these grounds, the Court denied the defendant's motion to dismiss the Indictment based on the predicate conviction of conspiracy to commit armed robbery.

Again, the reasoning and analysis set forth by the Court in *Quinn* is directly applicable to the facts presented herein. Thus, for the same reasons, the Defendant's predicate felony of conspiracy to commit armed robbery supports the application of § 922(g)(1).

## V.    CONCLUSION

For the above reasons, Defendant's Motion to Dismiss the Indictment[71] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 2 day of July, 2025.

*Shelly D. Dick*
SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[67] *Id.*
[68] *Id.* The Court specifically discussed Massachusetts, South Carolina, Connecticut, Vermont, and Louisiana, as a Spanish colony in 1770.
[69] *Id.* at *10.
[70] *Id.*
[71] Rec. Doc. 18.